FILED
United States Court of Appeals
Tenth Circuit

January 31, 2013

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

LINH TRAN,

      Plaintiff-Appellant,

v.

NATIONWIDE MUTUAL INSURANCE
COMPANY,

      Defendant-Appellee.

No. 12-5027
(D.C. No. 4:11-CV-00374-CVE-FHM)
(N.D. Okla.)

**ORDER AND JUDGMENT**[*]

Before **LUCERO**, **TYMKOVICH**, and **HOLMES**, Circuit Judges.

Linh Tran appeals from the district court's order denying her motion for partial

summary judgment as to liability on her breach of contract and bad faith claims and

granting summary judgment in favor of Nationwide Mutual Insurance Company as to

those claims.  We have jurisdiction under 28 U.S.C. § 1291, and affirm.

**I.**

---

[*]     After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument.  *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore
ordered submitted without oral argument.  This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel.  It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Ms. Tran was involved in an automobile accident with an uninsured motorist. Her vehicle was insured under an auto policy issued by Nationwide to Ms. Tran's father, Joseph Tran, and contained a $25,000 limit for uninsured motorist coverage.

Not long after the June 2009 accident, Mr. Tran submitted a claim to Nationwide for property damage and personal injuries suffered by his daughter. Nationwide acknowledged the claim, and on July 28, 2009, sent a check to Mr. Tran for the damaged vehicle. Some months later, Ms. Tran retained a lawyer who contacted Nationwide. On December 10, 2009, Nationwide wrote to the lawyer asking for Ms. Tran's medical records and lost wage information. Having received no response, Nationwide wrote to the lawyer in March 2010, again asking for the medical records and an update on Ms. Tran's injuries. Once again, there was no response. In August 2010, Nationwide followed up with its third request.

On August 26, 2010, the lawyer sent Nationwide Ms. Tran's "relevant medical records and itemized billing . . . putting you on notice and requesting that you tender Linh Tran's policy limits within thirty (30) days of receipt of this letter." Aplt. App. at 36. The parties disagree as to the amount of economic damages established by the "itemized billing"; Ms. Tran says it was $11,169.74 and Nationwide says it was $10,507. For the reasons explained below, we agree with the district court that the discrepancy is immaterial.

There ensued a series of exchanges between Ms. Tran's lawyer and Nationwide to try to resolve the claim. The parties agree that on September 2, 2010,

Nationwide telephoned the lawyer and made a settlement offer. According to Nationwide, it offered $14,500 to settle both the economic and non-economic damages; Ms. Tran says the offer was for $14,000. Again, the difference is immaterial because the parties agree that the offer was not accepted and the parties continued to negotiate. According to Nationwide, Ms. Tran's lawyer telephoned on September 3 and demanded $23,000 in settlement; Ms. Tran denies that the call took place. Although it makes little sense that Nationwide would increase its offer without any demand from Ms. Tran, the parties agree that on September 7, Nationwide increased its offer to $18,000, which was memorialized in writing on October 12.

The stalemate continued until December 4, 2010, when Nationwide wrote to Ms. Tran's lawyer informing him that a new claims adjuster had been assigned to the case and reconfirmed its $18,000 settlement offer. Ms. Tran's lawyer telephoned the new adjuster on December 9. According to the adjuster's notes, the lawyer told her "that Oklahoma law requires us to pay the undisputed amount of [bodily injury uninsured motorist] (i[.]e. our first offer) and that all carriers do this." *Id*. at 107. The adjuster told him that she "was new to [Oklahoma], but [to] send [] the law that he was relying upon. . . . I [also] asked him if he had any other counteroffers since the last time [] he was at $23k and he said he hadn't spoken to his clients in awhile [sic]." *Id*. There was no further communication from Ms. Tran's lawyer, and on December 23, the adjuster wrote to confirm the $18,000 offer. She also wrote her

understanding that only the undisputed amount of property damages must be paid under Oklahoma law, and "that it is not industry practice to settle uninsured motorist bodily injury claims piecemeal," *id*. at 108, in an apparent reference to economic and non-economic damages. The adjuster asked the lawyer to present the offer to Ms. Tran and call her with a response.

The year 2011 began with yet another letter to Ms. Tran's lawyer from Nationwide on February 3, in which it confirmed its $18,000 settlement offer and stated its awareness of a physician's lien in the amount of $3,290. Nationwide sent another letter on February 25, reconfirming the offer and stating its belief that "this offer to your client is fair given the injuries sustained were soft tissue in nature. Further, Ms. Tran has not sought treatment in over 1.5 years. Should you wish I re-evaluate the value of this claim, I welcome any medical documents you would like to present for my review." *Id*. at 110.

When there was no response, Nationwide wrote again to Ms. Tran's lawyer on March 31, 2011 "to again confirm our offer of $18,000.00." *Id*. at 111. The adjuster further wrote that she had left a message with the lawyer's assistant "regarding medical records we have on file," *id*., and offered to re-evaluate the claim upon providing additional documentation because "[t]he last date of treatment for Ms. Tran we have on file is 8/26/2009," *id*. This offer and request for additional information was repeated in a letter from Nationwide dated April 18, in which it said that it was willing to negotiate the claim, but Ms. Tran had "not moved off [her] demand of

$23,000 since it was first presented in September 2010." *Id*. at 112. Nationwide sent a similar letter on May 23.

Ms. Tran's response was to file suit in state court for breach of contract and breach of the implied duty of good faith and fair dealing. Nationwide removed the case to federal court based on the amount in controversy and diversity of citizenship. *See* 28 U.S.C. § 1332. During the litigation, the parties were ordered to participate in a settlement conference. On December 5, 2011, the day before the conference, Ms. Tran filed her motion for summary judgment, in which she sought "partial summary judgment on the issue of [Nationwide's] liability for breach of contract and breach of duty of good faith and fair dealing, reserving the issue of damages for further consideration and hearing." Aplt. App. at 26-27.

The parties met for the settlement conference on December 6, 2011. When the case did not settle, Nationwide tendered a check to Ms. Tran for $11,169.74. Eventually, Nationwide filed its motion for summary judgment. The district court granted Nationwide's motion and denied Ms. Tran's motion. This appeal followed.

**II.**

In a diversity case, "the laws of [Oklahoma], the forum state, govern our analysis of the underlying claims while federal law determines the propriety of the district court's grant of summary judgment." *Reid v. Geico Gen. Ins. Co.*, 499 F.3d 1163, 1167 (10th Cir. 2007). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to

judgment as a matter of law." Fed. R. Civ. P. 56(a). "In applying the standard set forth in Rule 56[(a)], we must examine the record in the light most favorable to . . . the non-moving party." *Reid*, 499 F.3d at 1167.

## III.

Ms. Tran's argument on appeal is two-fold. First, she claims that Nationwide breached the implied covenant of good faith and fair dealing because it failed to tender the undisputed amount of Ms. Tran's medical expenses until after suit had been filed. Second, she argues that Nationwide is still in breach of contract because it "has failed to tender the remaining contractual benefits to which [Ms. Tran] is entitled, that is, the general/non-economic damages for pain and suffering, etc." Aplt. Opening Br. at 10.

### A. Bad Faith

Under Oklahoma law,

> [T]he elements of a bad faith claim against an insurer for delay in payment of first-party coverage are: (1) claimant was entitled to coverage under the insurance policy at issue; (2) the insurer had no reasonable basis for delaying payment; (3) the insurer did not deal fairly and in good faith with the claimant; and (4) the insurer's violation of its duty of good faith and fair dealing was the direct cause of the claimant's injury. The absence of any one of these elements defeats a bad faith claim.

*Ball v. Wilshire Ins. Co.*, 221 P.3d 717, 724 (Okla. 2009) (footnotes omitted).

In a bad faith tort action, "[t]he critical question . . . is whether the insurer had a good faith belief, at the time its performance was requested, that it had a justifiable reason for withholding or delaying payment under the policy." *Id*. at 725 (brackets

and quotation marks omitted); *see also Garnett v. Gov't Emps. Ins. Co.*, 186 P.3d 935, 944 (Okla. 2008) ("A central issue is whether the insurer had a good faith belief in some justifiable reason for the actions it took or omitted to take that are alleged to be violative of the duty of good faith and fair dealing.").

But "[b]efore the issue of an insurer's alleged bad faith may be submitted to the jury, the trial court must first determine as a matter of law, under the facts most favorably construed against the insurer, whether the insurer's conduct may be reasonably perceived as tortious. It is not a breach of the duty of good faith for an insurer to resort to a judicial forum to settle legitimate disputes as to the validity or amount of an insurance claim." *Garnett*, 186 P.3d at 944 (footnotes omitted).

Ms. Tran argues that Nationwide's delay in paying her undisputed economic damages was unreasonable and constitutes bad faith. We disagree. In late August 2010, Ms. Tran's lawyer sent Nationwide a packet of information that included some medical bills and records. In the enclosure letter, Ms. Tran's lawyer demanded that Nationwide "tender [Ms.] Tran's *policy limits* within thirty (30) days of receipt of this letter." Aplt. App. at 36 (emphasis added). As the district court found, within a week of receiving Ms. Tran's demand for the policy limits, Nationwide "made a settlement offer . . . approximately $3,000 more than the amount of [her] economic damages. Within one week of the initial offer, [Nationwide] made a second offer . . . approximately $7,000 more than the amount of [her] economic damages. [Her] attorney rejected these offers by telephone." *Id*. at 193-94.

Over the next eight months, Nationwide sent Ms. Tran's lawyer eight letters confirming its $18,000 settlement offer and stating that it would be willing to reevaluate the claim if there was additional information. The undisputed evidence reveals an effort by the parties (albeit with minimal participation from Ms. Tran) to resolve both components of the personal injury claim, i.e., the economic and non-economic damages.[1] We agree with the district court's conclusion "that no reasonable jury could conclude that [Nationwide] acted unreasonably in withholding payment. There is no genuine dispute as to any material fact that [Nationwide's] delay in payment was based on a legitimate dispute as to the value of [Ms. Tran's] claim." *Id*. at 194. Thus, summary judgment in favor of Nationwide on the bad-faith claim was proper.

---

[1]    Ms. Tran argues that *Government Employees Insurance Company v. Quine*, 264 P.3d 1245, 1250 (Okla. 2011), holds that an insurer's failure to unconditionally tender payment for the undisputed amount of the insured's economic damages is bad faith. In *Quine*, the court answered a certified question of law concerning an insurer's refusal to tender partial payment of uninsured motorist benefits under facts not present in this case. As the district court explained, "[w]hile there is dicta in Quine suggesting that a refusal to issue an unconditional advance payment to cover medical bills where the tortfeasor has no insurance may be more likely to constitute bad faith than the factual scenario in Quine, . . . [that case] does not hold that such failure is per se bad faith." Aplt. App. at 196.

**B. Breach of Contract**

The district court also correctly granted summary judgment in favor of Nationwide on Ms. Tran's breach of contract claim. Nationwide has paid Ms. Tran's economic damages in the amount of $11,169.74. On appeal, Ms. Tran argues that Nationwide nonetheless "remains in breach of its contract," Aplt. Opening Br. at 10, because it "has failed to tender the remaining contractual benefits to which [she] is entitled, that is, the general/non-economic damages for pain and suffering," *id*. According to Ms. Tran, she is "entitled to the limits of the UM policy at issue, $25,000," *id*. at 26, or "$13,830.26," *id*. at 27, which represents the policy limits less her economic damages of $11,169.74. However, there is no evidence in the record presented to the district court that Ms. Tran was entitled to the policy limits, or even what her non-economic damages were.

The judgment of the district court is affirmed.

Entered for the Court

Timothy M. Tymkovich
Circuit Judge